[No. 1003-2. Division Two. March 27, 1973.]

THE DEPARTMENT OF ECOLOGY et al., *Petitioners*, v. THE CITY OF KIRKLAND et al., *Respondents*.

*Slade Gorton, Attorney General*, and *Charles W. Lean, Assistant*, for petitioners.

*Ralph I. Thomas* (of *Ostrander, Van Eaton, Thomas & Ferrell*), *Stephen P. Ryder* (of *Monheimer, Schermer, Van Fredenberg & Smith*), and *Smith Troy, Prosecuting Attorney*, and *Jane Dowdle Smith, Deputy*, for respondents.

PETRIE, J.—The City of Kirkland issued a substantial

development permit on November 1, 1971, authorizing construction of an all-weather moorage facility on Lake Washington. Acting under authority granted by the provisions of RCW 90.58.180, the Department of Ecology and the Attorney General of the State of Washington sought review of the matter by the Shorelines Hearings Board. RCW 90.58.180 directs that review proceedings by the board are subject to the provisions of RCW 34.04 pertaining to procedures in contested cases. The board convened a formal hearing and recorded the proceedings.

After review of the record, including exhibits introduced, three board members signed one set of proposed findings, conclusions and order modifying the permit and the three other members of the board signed another set of proposed findings, conclusions and order upholding the permit as issued. On August 15, 1972, the then chairman of the Shorelines Hearings Board executed and transmitted to the interested parties a document entitled Statement on Behalf of The Shorelines Hearings Board. The statement declared, in part:

> While the members of the Board are generally in accord as to the facts, they do not attach equal relevance and importance to the same facts, and they differ as to the conclusions to be drawn therefrom, and as to the order that should be entered. To fully understand the positions taken, the differing Proposed Findings and Conclusions must be read.
>
> Since the statute creating the Shorelines Hearings Board requires that all orders entered by it must be agreed to by at least four members, the Board is unable to render any decision or to enter any order on this Request for Review.

The Department of Ecology and the Attorney General filed a petition in the Superior Court for Thurston County, pursuant to RCW 34.04.130, seeking review of the "decision" of the board embodied in the August 15 statement. The court, on its own motion, raised the question of whether or not the matter was properly before the court for review. The court determined that there was no basis

for review under the administrative procedure act, or otherwise, and indicated an intention to sign an order remanding the matter to the board for reconsideration, with the proviso that if the board should still be equally divided the court would dismiss the petition for failure of the petitioners to sustain their burden of proof to the satisfaction of a majority of the board.

The petitioners have now filed, in this court, an application for writ of mandamus seeking a directive that the Superior Court for Thurston County, alternatively (1) take jurisdiction over this cause and review the board's action pursuant to RCW 34.04.130; or (2) take jurisdiction over this cause and conduct a de novo review thereof; or (3) remand the cause back to the board for further consideration without limiting the petitioners' right to seek review of any subsequent board action.

█ We hold that the superior court does have jurisdiction in this cause and the review can and should be made pursuant to the provisions of RCW 34.04.130(5) and (6).

The statement issued by the chairman of the board on behalf of the board did constitute the final action of the board. It is true that a "decision" of the board on the merits of the matter before it was not reached "by at least four members."[1] The fact that a majority of the board could not agree upon a course of action merely meant that the board could not take affirmative action upon the given proposition. The board did reach a decision, however. That decision was that there was no majority of members who could agree upon specific findings, conclusions and an order based

---

[1] RCW 90.58.170 provides, in part: "A shorelines hearings board sitting as a quasi judicial body is hereby established which shall be made up of *six members*: Three members shall be members of the pollution control hearings board; two members, one appointed by the association of Washington cities and one appointed by the association of county commissioners, both to serve at the pleasure of the associations; and the state land commissioner or his designee. The chairman of the pollution control hearings board shall be the chairman of the shorelines hearings board. *A decision must be agreed to by at least four members of the board to be final.*" (Italics ours.)

thereon. By operation of law, therefore, the action of the City of Kirkland in granting the permit stands affirmed. *State v. Beck*, 56 Wn.2d 474, 349 P.2d 387 (1960).

The trial court recognized the effect caused by the stalemate among the board members, but was of the impression that the chairman's statement did not constitute a "final decision" judicially reviewable pursuant to RCW 34.04.130 (1), which provides, in part:

(1) Any person aggrieved by a *final decision* in a contested case, whether such decision is affirmative or negative in form, *is entitled to judicial review thereof* . . .

(Italics ours.)

We hold that the chairman's statement came within the ambit of RCW 34.04.130 (1), above,—and that it was a sufficient vehicle to grant the superior court review jurisdiction when presented by a person aggrieved thereby. To hold otherwise would place in the hands of one-half of the members of the board the authority to deny judicial review of the board's inability to agree upon an affirmative course of action. We do not believe that was ever intended by the legislature. Having determined that the court had jurisdiction to review the matter, we must now consider the precise manner of that review. The statutory guides are provided in RCW 34.04.130 (5) and (6):

(5) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court shall, upon request, hear oral argument and receive written briefs.

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

It appears to us that, by review of the board proceedings, the trial court can meet all of the statutory review requirements, except for the possible problem presented by a lack of any board findings, conclusions or affirmative order. Suggestions have been made to us, by several of the contending parties, that (1) the findings of the three members of the board which would sustain the action of the City of Kirkland should be considered by the court as the findings of the board; or (2) that the court should accept—and somehow review—both sets of findings as the findings of the board. Neither suggestion is appropriate. The court must review the record unaided by any specific findings.

■ Fortunately, the only "factual" review of an administrative agency's determination as declared in RCW 34.04.130(6) above, is tested by whether or not

substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order.

That test requires much broader court review than a mere search of the record to ascertain whether or not there is substantial evidence in the record to support the agency's findings or decision. *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969); *Williams v. Young,* 6 Wn. App. 494, 494 P.2d 508 (1972). Indeed, the test requires that the reviewing court evaluate the entire record—not merely the findings or conclusions—to determine whether or not, after such review, the court is left with the definite and firm conviction that a mistake has been committed by the administrative agency. *Ancheta v. Daly, supra.* Ordinarily, of course, it would be highly desirable for a court to have the benefit of an agency's expertise through resolution of con-

tested factual situations. However, entry of findings in specialized fields of endeavor does not absolve the reviewing court from the duty to search the "entire record." *See Williams v. Young, supra; Convoy Co. v. State Util. & Transp. Comm'n,* 3 Wn. App. 1005, 479 P.2d 151 (1970).

We hold that even in the absence of specific findings, conclusions, or affirmative order (which cannot be corrected by appropriate remand to the administrative agency), the reviewing court can and must conduct the limited factual review required by RCW 34.04.130(6)(e) in order to ascertain whether or not, after such review of the entire record, it is left with the definite and firm conviction that a mistake has been committed by the administrative agency.

The writ of mandamus is granted. The trial court is directed to assume jurisdiction of the cause and review the proceedings pursuant to the mandate of RCW 34.04.130.

PEARSON, C. J., and ARMSTRONG, J., concur.

Petition for rehearing denied May 3, 1973.

Review granted by Supreme Court June 20, 1973.