[No. 42821.   En Banc.   July 3, 1974.]

THE DEPARTMENT OF ECOLOGY *et al., Respondents,* v. THE CITY OF KIRKLAND *et al., Respondents,* ROBERT J. DORAN, *Judge of the Superior Court for Thurston County, Petitioner.*

*Smith Troy, Prosecuting Attorney,* and *Jane Dowdle Smith, Chief Deputy,* for petitioner.

*Slade Gorton, Attorney General,* and *Charles W. Lean, Assistant,* for respondents Department of Ecology et al.

*Ostrander, Van Eaton, Thomas & Ferrell* and *Ralph I. Thomas,* for respondents Kirkland et al.

HAMILTON, J.—On November 1, 1971, the City of Kirkland issued a substantial development permit authorizing construction of an all-weather moorage facility on Lake Washington by the Bittman, Sanders, Hasson Corporation. Since this proposed moorage facility would allegedly result in a substantial increase in the lake's surface area being covered by structures as compared to the existing situation, the Department of Ecology and the Attorney General sought review of this matter by the Shorelines Hearings Board pursuant to RCW 90.58.180. RCW 90.58.180 directs that review proceedings by the board are subject to the provisions of RCW 34.04 (the administrative procedure act) pertaining to procedures in contested cases.

After a review of the record made before the board, three of the board members voted to uphold the permit and three voted to modify the permit. On August 15, 1971, the chairman of the board issued a statement declaring that the board was unable to render any decision or to enter any orders since four members could not concur under RCW 90.58.170:

> A shorelines hearings board sitting as a quasi judicial body is hereby established which shall be made up of six members . . . The chairman of the pollution control hearings board shall be the chairman of the shorelines hearings board. *A decision must be agreed to by at least four members of the board to be final.* The pollution control hearings board shall provide the shorelines appeals board such administrative and clerical assistance as the latter may require. The members of the shorelines appeals board shall receive the compensation, travel, and subsistence expenses as provided [by statute].

(Italics ours.)

The Department of Ecology and the Attorney General filed a petition in the Superior Court for Thurston County, seeking review of the "decision" of the board embodied in the chairman's statement. Proceedings before the Shorelines Hearings Board are made subject to the administrative procedure act, and RCW 34.04.130(1)[1] provides that "final" decisions in contested cases may be judicially reviewed in the superior courts of this state. The trial court, on its own motion, reasoned that, since no final order had been entered pursuant to RCW 90.58.170, it had no jurisdiction under either the administrative procedure act or otherwise to review the board's action. The court then indicated

---

[1]"(1) Any person aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof only under the provisions of this 1967 amendatory act, and such person may not use any other procedure to obtain judicial review of a final decision, even though another procedure is provided elsewhere by a special statute or a statute of general application. Where the agency's rules provide a procedure for rehearing or reconsideration, and that procedure has been invoked, the agency decision shall not be final until the agency shall have acted thereon." (Footnote omitted.) RCW 34.04.130(1).

an intention to remand the matter to the board for reconsideration with the proviso that if the board should still be equally divided, the court would dismiss the petition for failure of the petitioners to sustain their burden of proof to the satisfaction of a majority of the board.

The Department of Ecology and the Attorney General applied to the Court of Appeals for a writ of mandamus directing the Superior Court to alternatively: (1) take jurisdiction and review the board's action; or (2) take jurisdiction and conduct a de novo review; or (3) remand back to the board for further consideration without limiting the petitioners' right to seek review of any subsequent board action.

On March 27, 1973, the Court of Appeals, Division Two, unanimously granted the writ of mandamus, directing the trial court to assume jurisdiction of the cause and to review the proceedings pursuant to RCW 34.04.130(5) and (6).[2] *Department of Ecology v. Kirkland*, 8 Wn. App. 576, 508 P.2d 1030 (1973). In so doing, the court held: (1) the statement issued by the chairman of the board constitutes a "final action" by the board since by operation of law the action of the City in granting the permit stands affirmed; (2) due to the lack of any findings, conclusions or affirma-

---

[2] "(5) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court shall, upon request, hear oral argument and receive written briefs.

"(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) arbitrary or capricious." RCW 34.04.130(5) and (6).

tive orders, signed by four members of the board, the trial court must review the record unaided by any specific findings; and (3) even in the absence of such findings, conclusions, or affirmative orders, which cannot be corrected by a remand to the administrative agency, the trial court can and must conduct a limited factual review, as required by RCW 34.04.130(6)(e) in order to ascertain whether or not it is left with the " 'definite and firm conviction that a mistake has been committed [by the administrative agency].' " *Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969).

This case initially raises the following question: Where an administrative agency, made up of an even number of members, divides in its vote equally on a contested matter, is the action thereby taken a "final action or order" under the Washington administrative procedure act? This query brings into application the overlapping doctrines of the final order rule, exhaustion of administrative remedies and ripeness for review, which all deal with the problem of whether a petitioner seeking judicial review has prematurely resorted to the courts. What is sometimes called the "final order doctrine" prevents review of an order which is not final under a statutory provision for review of an "order." *Federal Power Comm'n v. Metropolitan Edison Co.*, 304 U.S. 375, 82 L. Ed. 1408, 58 S. Ct. 963 (1938).

Since there are no Washington cases discussing what is meant by a "final decision" under RCW 34.04.130, we feel it appropriate to look to the federal realm for guidance in this area. Initially, it is noted that whether or not the statutory requirements of finality are satisfied in any given case depends not upon the label affixed to its action by the administrative agency, but rather upon a realistic appraisal of the consequences of such action. *Isbrandtsen Co. v. United States*, 211 F.2d 51, 55 (D.C. Cir. 1954). Justice Frankfurter stated in *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 425, 86 L. Ed. 1563, 62 S. Ct. 1194 (1942), that:

The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.

Thus, administrative orders are ordinarily reviewable when "they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 92 L. Ed. 568, 68 S. Ct. 431 (1948). *See generally* K. Davis, *Administrative Law Text* § 21.06 (3d ed. 1972); 3 K. Davis, *Administrative Law Treatise* § 21.07 (1958); W. Gellhorn & C. Byse, *Administrative Law —Cases and Comments* 213-15 (5th ed. 1970).

■   The tie-vote board determination resulted in the decision of the City of Kirkland standing affirmed. *State v. Beck*, 56 Wn.2d 474, 349 P.2d 387 (1960). As such, it in effect determined the action or proceeding and fixed a legal relationship between the parties, thus rendering that decision "ripe for review" and fully qualifying it as a "final decision" under RCW 34.04.130. In addition, the language of RCW 34.04.130 providing for reconsideration of agency determinations is not of a mandatory nature. The fact that the petitioners did not request a reconsideration of this matter before the board does not render the board's action nonfinal.

■   Finding such an administrative agency action to be final, the next question raised is whether such a tie-vote determination is subject to judicial review by a superior court under the Washington administrative procedure act. In view of the deference that this court has given to the expertise of administrative tribunals, *Ancheta v. Daly, supra,* and in view of the change in membership of the Shorelines Hearings Board since the initial consideration of this controversy, the most practical solution to this problem would seem to be a remand to the board for a new vote in

an effort to get the statutory concurrence of four members. However, we feel that the provisions of RCW 90.58.170, requiring the concurrence of four board members for a final decision, relate to the mechanics of decisionmaking by the board, rather than to the right of judicial review by an aggrieved party. To rule otherwise would seriously restrict a party's right to judicial review under the statutes and would impliedly amend the state administrative procedure act. We do not feel that this was the legislative intent in the passage of RCW 90.58.170. We therefore affirm the Court of Appeals' conclusion that this action by the Shorelines Hearings Board was a sufficient vehicle to grant the superior court review jurisdiction when presented by a person aggrieved thereby.

Having determined that the Superior Court had jurisdiction to review the matter, we must now consider the specific manner and standards to be applied by that court in its review.

We agree with the Court of Appeals that the statutory guides provided in RCW 34.04.130(5) and (6), are the appropriate standards to be applied by the Superior Court in this case. However, we do not agree that the Superior Court must review the record unaided by any specific findings. Since we have held that the effect of the board's decision is to affirm the City's grant of the permit, we feel it appropriate that the Superior Court should review that decision within the context of the findings of fact and conclusions of the three board members who voted to affirm the City's position. To hold otherwise would not only leave the trial court without the benefit of the agency's expertise, but would also tend to alter the traditional relationship between administrative agencies and the judiciary.

The grant of the writ of mandamus by the Court of Appeals is affirmed as modified. The trial court is directed

to assume jurisdiction of the cause and to review the proceedings pursuant hereto.

HALE, C.J., and ROSELLINI, HUNTER, UTTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (dissenting)—The Shorelines Hearings Board is a creature of the legislature. Its functions and *the manner* in which they are to be performed are prescribed by the legislature. More specifically, the legislature, in enacting RCW 90.58.170, provided that the shorelines board would be a quasi-judicial body; that it would consist of six members; and most significantly, that a decision of the board must be agreed to by *at least four members to be final.* The board reached a stalemate, *i.e.,* a tie (3-to-3) vote in the matter involved in this appeal. This was, I think undebatably, the equivalent of no action or nonaction by the board under the statutory provisions referred to above, requiring an affirmative vote of at least four members of the board to reach a final decision. Why the legislature in establishing the board prescribed such a unique method for the board to reach and effectuate a final decision is not known, certainly not to members of this court. However, they did so. This is obvious and known to the members of this court and anyone else having occasion to read the statute. Perhaps this unique or anomalous situation of a tie vote under statute is worthy of further consideration and possible change by the legislature, but since the legislature in either its wisdom or by inadvertence has constituted the board in this manner, it is not for us to second guess the legislature and change the situation. Presently under the statute as it now exists, I am convinced that as a matter of logic and law there is no action, no final decision, by the shorelines board for the Superior Court or for this court to review. This being the case, I would reverse the opinion of the Court of Appeals mandating a review by the Superior Court. This would have the effect of affirmance of the decision of the Superior Court for Thurston County which rea-

soned and acted in accordance with the reasoning expressed in this dissent.

STAFFORD and WRIGHT, JJ., concur with FINLEY, J.

Petition for rehearing denied September 25, 1974.